IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                               :
JOSEPH B. MASON, Individually  :
and on behalf of all persons   :     HON. JEROME B. SIMANDLE
similarly situated,            :
                               :     Civil No. 11-2370 (JBS/KMW)
               Plaintiff,      :
                               :
     v.                        :          OPINION
                               :
KATHLEEN SEBELIUS, et al.,     :
                               :
               Defendants.     :
_____
```

APPEARANCES:

Alan Herschel Sklarsky, Esq.
Mark R. Cuker, Esq.
WILLIAMS CUKER BEREZOFSKY
210 Lake Drive East
Suite 101 Cherry Hill, NJ 08002
     -and-
Franklin P. Solomon, Esq.
LOCKS LAW FIRM, LLC
457 Haddonfield Road
Suite 500 Cherry Hill, NJ 08002
     Attorneys for Plaintiff Joseph B. Mason

Tony West, Assistant Attorney General
Paul J. Fishman, United States Attorney
Susan Handler-Menahem, Assistant United States Attorney
Sheila Lieber, Assistant Director
Benjamin Leon Berwick, Trial Attorney
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
     Attorneys for Defendants Kathleen Sebelius, United States
Department of Health and Human Services and the United States of
America

**SIMANDLE**, Chief Judge:

I.  **INTRODUCTION**

     This matter is before the Court on the motion of Defendants

Kathleen Sebelius, United States Department of Health and Human

Services, and the United States of America ("Defendants") to dismiss Plaintiff Joseph Mason's putative class action Complaint or in the alternative for summary judgment [Docket Item 10]. Specifically, Defendants move to dismiss for lack of subject matter jurisdiction Plaintiff's second cause of action for violation of his due process rights, pursuant to Rule 12(b)(1), Fed. R. Civ. P., and Defendants move to dismiss Plaintiff's other two causes of action for failure to state a claim or alternatively move for summary judgment.  The principal questions raised by this motion are (1) whether the Court has subject matter jurisdiction to hear Plaintiff's unexhausted due process claim; (2) whether the Medicare as a Secondary Payer ("MSP") provisions codified at 42 U.S.C. § 1395y(b)(2) authorize reimbursement to Medicare from Plaintiff's lump sum tort settlement; (3) whether such reimbursement is prohibited by the New Jersey Collateral Source Statute ("NJCSS"), N.J. Stat. Ann. § 2A:15-97; and (4) if such reimbursement is prohibited by the NJCSS, whether the state statute is therefore preempted by the federal MSP statute and regulations.

    As explained below, because the Court concludes that it lacks subject matter jurisdiction to hear Plaintiff's unexhausted due process claim, and that reimbursement of Medicare Benefits was authorized under the MSP and was not prohibited by the NJCSS, the Court will grant Defendants' motion to dismiss and for

2

summary judgment.

## II.  BACKGROUND

This action relates to the interaction of two statutes that are both intended, in part, to prevent double recovery by a beneficiary of preliminary health care benefits who later receives a tort liability judgment or settlement.  Plaintiff claims that, rather than receiving a double recovery in this matter, he has fallen into a gap between the two statutes such that he has been denied any recovery for his medical costs at all.  Defendants maintain, by contrast, that Plaintiff initially received a double recovery for his medical costs: first through his provisional Medicare benefits and second via a tort settlement, which was only rectified by Medicare seeking reimbursement from him.

The following facts are taken from the parties' undisputed statements of material facts and, unless otherwise noted, are supported by the administrative record.

On August 19, 2004, Plaintiff Joseph Mason was injured when he slipped and fell at the Showboat Hotel and Casino ("Showboat") in Atlantic City, New Jersey.  AR at 21.[1]  Medicare paid for

---

[1] As required under 42 U.S.C. § 405(g), made applicable to the Medicare Act by operation of 42 U.S.C. § 1395ff(b)(1)(A), Defendants attached to their motion the certified copy of the administrative record, including the evidence upon which the administrative findings and decision about which Plaintiff has

Plaintiff's medical expenses incurred as a result of his injuries in the amount of approximately $2,503.  Id. at 52.  On July 20, 2006, Plaintiff and his spouse filed suit against, inter alia, Showboat in the Superior Court of New Jersey, Atlantic County, seeking damages for Plaintiff's pain and suffering, medical costs, and for his wife's loss of consortium.  Id. at 74-77.  In Plaintiff's Superior Court tort complaint, Plaintiff expressly included his medical costs in his claim and sought damages on that basis.  Id. at 76 ¶ 12.

A contractor for Medicare contacted Plaintiff by letter dated June 6, 2008, notifying Plaintiff that the Medicare benefits paid to Plaintiff for his injuries would be subject to reimbursement should Plaintiff settle or obtain a judgment of damages from the tort defendant.  Id. at 249-50.  The letter stated that "[i]t would be in your best interest to keep Medicare's payments and the statutory obligation to satisfy Medicare in mind when the final dollar amount is negotiated and accepted in resolution of the claim with the third party."  Id. at 250.

On September 25, 2008, Plaintiff and his wife signed a release agreement settling the tort action with Showboat,

---

complained are based.  Def.s' Exhibit 1.  The Court, following the convention adopted by the parties, will cite to the administrative record according to the Bates Stamp number "AR at XX".

releasing all claims against it for its liability stemming from
Plaintiff's fall, including his wife's claim, in exchange for a
lump sum payment of $40,000.  Id. at 221-222.  The release did
not specifically allocate the settlement funds between
Plaintiff's medical costs, his pain and suffering, or his wife's
loss of consortium claim, but Plaintiff agreed to indemnify
Showboat against, inter alia, any liability for Medicare liens or
claims for reimbursement.  Id.

Thereafter, Plaintiff sought an order from the Superior
Court apportioning the settlement proceeds, declaring that no
portion of the settlement was attributable to medical expenses.
Id. at 25; Plaintiff's Ex. A.  The Superior Court denied
Plaintiff's motion on November 7, 2008, concluding that under 42
U.S.C. § 405(g), such a determination must be made first through
the Medicare administrative review process.  Plaintiff's Ex. A at
5.

On April 16, 2009, based on Plaintiff's settlement recovery,
the Medicare Secondary Payer Recovery Contractor, on behalf of
the Centers for Medicare and Medicaid Services ("CMS") demanded
reimbursement of a portion of the Medicare funds provided for
Plaintiff's medical care.  AR at 209.  Specifically, the recovery
contractor demanded reimbursement of $1,423.43, which was
discounted from the $2,503.71 paid by Medicare, pursuant to 42
C.F.R. § 411.37, a regulation stating that CMS's reimbursement

will be reduced by taking into account the proportion of the total settlement or award expended in legal fees and costs ("procurement costs").  Id. at 210.

Plaintiff paid the reimbursement demand under protest and then sought a waiver and refund from CMS through the Medicare administrative appeals process.  Am. Compl. ¶¶ 17-18.  Plaintiff argued that Medicare was not entitled to a reimbursement because Plaintiff's settlement included no recovery attributable to his medical costs by operation of the NJCSS.  AR at 21-32.  Plaintiff appealed the initial determination on May 11, 2009, and the initial appeal was denied on September 17, 2009.  AR at 177.  Plaintiff thereafter sought reconsideration on October 2, 2009, id. at 169, which was again denied on December 4, 2009.  Id. at 129.  Plaintiff then appealed to a Medicare Administrative Law Judge on January 12, 2010.  Id. at 102.  The ALJ held a telephone hearing on Plaintiff's appeal on March 9, 2010 where she heard Plaintiff's attorney present his argument for reconsidering the initial determination.  Id. at 92.  The ALJ issued a decision affirming the initial determination on March 15, 2010.  Id. at 50-65.  Finally, Plaintiff appealed the ALJ's decision to the Medicare Appeals Council on April 14, 2010.  Id. at 21.  The Appeals Council denied the appeal in a final adverse decision on February 18, 2011.  Id. at 1-9.  Plaintiff did not raise any constitutional due process claim throughout the administrative

appeals process.

On April 22, 2011, Plaintiff filed his original Complaint in this matter; he then filed his First Amended Complaint on May 12, 2011 [Docket Item 5].  Plaintiff's Amended Complaint seeks, on behalf of himself and a class of others similarly situated, relief under three causes of action.  The first cause of action seeks a declaratory judgment that Medicare is not entitled to seek reimbursement of medical expenses from lump sum tort settlements in New Jersey due to the NJCSS, and Plaintiff seeks an injunction barring Defendants from pursuing such reimbursement.  Am. Compl. ¶¶ 38-44.  The second cause of action seeks damages for violating the due process rights of Plaintiff and the purported class as a result of Defendants' violations of the MSP provision and various Medicare regulations and policy guidelines.  Am. Compl. ¶¶ 45-56.  The third cause of action seeks recovery of the fees reimbursed to Medicare.  Am. Compl. ¶¶ 57-62.

Defendants subsequently filed, in lieu of an answer, the instant motion to dismiss for lack of subject matter jurisdiction (as to the due process claim) and for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment.  [Docket Item 10.]  Plaintiff filed opposition [Docket Item 13] to which Defendants filed a reply [Docket Item 16] and Defendants subsequently filed a notice of supplementary

authority.  [Docket Item 17.}

## III.  DISCUSSION

### A.  Subject Matter Jurisdiction

Defendants move to dismiss Plaintiff's second cause of action, his due process claim, under Fed. R. Civ. P. 12(b)(1), on the ground that the Court lacks subject matter jurisdiction to hear the claim because it arises under the Medicare Act and was not channeled through the agency review process.

### 1.  Standard of Review

The Supreme Court instructs that this Court's jurisdiction is limited:

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, see Willy v. Coastal Corp., 503 U.S. 131, 136-137 (1992); Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986), which is not to be expanded by judicial decree, American Fire & Casualty Co. v. Finn, 341 U.S. 6 (1951).  It is to be presumed that a cause lies outside this limited jurisdiction, Turner v. Bank of North-America, 4 U.S. 8 (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-183 (1936).

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

Challenges to subject matter jurisdiction under Rule 12(b)(1) may be "facial" or "factual."  Facial attacks challenge

8

the sufficiency of the complaint's allegations, so a court adjudicating a facial attack must accept those allegations as true and consider only facts alleged in the complaint.  Emerson Elec. Co. v. Le Carbone Lorraine, 500 F. Supp. 2d 437, 443 (D.N.J. 2007).  A factual attack, by contrast, looks beyond the allegations to attack jurisdiction in fact.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

Defendants do not explicitly articulate whether their challenge to the Court's subject matter jurisdiction is a facial or a factual challenge, but the Court notes that the determination turns on the factual question of what transpired during the administrative review process and whether Plaintiff channeled and fully exhausted his due process claim through that process to a final determination.  Plaintiff does not allege this fact in his Amended Complaint; it can be determined only by reference to the administrative record.  Therefore, the Court will characterize Defendants' challenge as a factual one and will consider the factual material contained in the certified administrative record in making its determination.

2.   Jurisdiction under 42 U.S.C. § 405(h) and 28 U.S.C. § 1331

The federal question jurisdiction statute, 28 U.S.C. § 1331, does not provide the federal courts with jurisdiction to hear claims "arising under" the Medicare Act.  The Medicare Act, by

operation of 42 U.S.C. § 1395ii,[2] incorporates 42 U.S.C. §

405(h), which provides in its third sentence:

> No action against the United States, [the
> Secretary], or any officer or employee thereof
> shall be brought under section 1331 or 1346 of
> Title 28 to recover on any claim arising under
> this subchapter.

Plaintiffs generally cannot assert their claims against

Medicare or its decisions in District Court under 28 U.S.C. §

1331 because the claims arise under Medicare. See Weinberger v.

Salfi, 422 U.S. 758, 760-61 (1975) (even constitutional claims

"arise under" Social Security Act, within meaning of 42 U.S.C. §

405(h), when Social Security Act "provides both the standing and

the substantive basis for the presentation of [plaintiffs']

constitutional claims").  This is so even for Plaintiff's due

process claim.  As the Third Circuit has said, "If [plaintiff's]

class action complaint asserts a claim that 'aris[es] under' the

Medicare Act, then the third sentence of § 405(h) precludes the

district court from exercising federal question jurisdiction over

it." Fanning, 346 F.3d at 392.  Thus, for claims arising under

Medicare, 42 U.S.C. § 405(g) generally provides the exclusive

basis for federal judicial jurisdiction and then only after

exhaustion of agency appeals, as discussed below.

Section 405(h) of Title 42 is more than an exhaustion

---

[2] 42 U.S.C. § 1395ii makes certain provisions of the Social
Security Act, including 42 U.S.C. § 405(h), applicable to the
Medicare Act.

requirement; it precludes federal courts from relying on 28 U.S.C. § 1331 for exercising jurisdiction over claims arising under the Medicare Act.  See, e.g., Heckler v. Ringer, 466 U.S. 602, 614-15 (1984); Fanning, 346 F.3d 386.

> The third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act.

Heckler v. Ringer, 466 U.S. at 614-15.

However, a narrow exception to the exclusion of § 1331 jurisdiction exists for claims arising under the Medicare Act that cannot receive any agency review.  Medicare plaintiffs need not channel their claims through CMS if the agency provides "no review at all" for the claims at issue.  See Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 19 (2000).

In Michigan Academy, family physicians sued to challenge the validity of a federal regulation, promulgated under Part B of Medicare, for which there was no agency review available.  The challenged provision authorized the payment of benefits in different amounts for similar services.  The Supreme Court held that § 405(h) did not bar federal district court jurisdiction because there was no clear indication that the statute was meant to foreclose all review of substantial statutory and constitutional challenges.  Indeed, the Court noted, it would be unreasonable to presume that Congress intended to permit eventual

11

judicial review of less substantial determinations (for which there was available administrative review) but to foreclose all review of claims alleging that CMS has violated the law by promulgating an unconstitutional regulation.

The Michigan Academy case has been interpreted as creating an exception to § 405(h)'s bar on § 1331 federal question jurisdiction for claims arising under Medicare when such a bar would foreclose all review of those claims, rather than just channel them through the agency.  See Fanning, 346 F.3d at 400.

For example, the Third Circuit's Fanning decision acknowledges that where CMS provides no process for review, federal claims are cognizable in federal court notwithstanding the third sentence of § 405(h).  Id. ("Of course, the . . . plaintiffs would not have to channel their claim through the agency if they could avail themselves of the Michigan Academy exception.  That is to say, channeling would not be required if they could show that they have no way of having their claims reviewed.")

3.  Application

In the instant motion, Plaintiff's particular theory of subject matter jurisdiction is not entirely clear.  Plaintiff does not claim that he fully exhausted his due process claim such that the Court would have jurisdiction under § 405(g). Additionally, Plaintiff does not explicitly dispute Defendant's

12

characterization of his due process claim as "arising under" the Medicare Act pursuant to § 405(h).[3]  Plaintiff does, however, allege in his Amended Complaint that the Court has jurisdiction for the due process claim under § 1331, and argues in his brief in opposition that such jurisdiction is justified because the agency has no process of agency review for addressing constitutional claims.  The Court therefore infers from these clues that Plaintiff means to base the Court's jurisdiction on the Michigan Academy exception, that "a suit filed under the district court's federal question jurisdiction is the only avenue available" to raise the due process claim that Defendant's reimbursement demands of lump sum tort settlements in New Jersey is a due process violation.  Fanning, 346 F.3d at 400.

---

[3] Plaintiff does, however, contend that the due process claim is "wholly unrelated to any substantive claim of entitlement regarding either eligibility for or amount of benefits that may be due plaintiff under the Medicare program." Pltf.'s Brief at 31.  To the extent that Plaintiff means this assertion to support the proposition that the claim does not arise under the Medicare Act, the Court disagrees.  The essence of Plaintiff's due process claim is that, under the Medicare Act and applicable regulations and policy statements, the government is not entitled to recover conditional Medicare payments from a beneficiary who has recovered a lump sum tort settlement in New Jersey.  Therefore, as the Third Circuit held in Fanning, Plaintiff's claim is "wholly dependent upon determining whether or not" CMS has correctly interpreted the MSP; "[i]t is thus apparent that both the standing and the substantive basis for the claim asserted in the amended class action complaint are rooted in, and derived from, the Medicare Act. Consequently, the Claim is one 'arising under' the Medicare act and the third sentence of § 405(h) therefore deprive[s] the [Court] of federal question jurisdiction." Fanning, 346 F.3d at 400.

The Court does not, however, find that the <u>Michigan Academy</u> exception applies in Plaintiff's situation, as the administrative record plainly demonstrates that the agency provided ample opportunities for Plaintiff to channel his constitutional claim. Plaintiff asserts without supporting evidence or citation that the available agency review provides an avenue to determine overpayments, but does not permit the beneficiary to raise constitutional issues.

As this Court held in <u>Merrifield v. United States</u>, Civ. No. 07-987, 2008 WL 906263 *12-13 (D.N.J. Mar. 13, 2008), adequate procedures for agency review are available for a constitutional due process claim such as Plaintiff's because such a claim could be raised in the context of contesting the denial of a waiver. The <u>Fanning</u> court came to the same conclusion by holding that "a challenge to the right of Medicare to seek reimbursement" on behalf of a class has an adequate avenue for administrative review through the existing administrative appeals process. <u>Fanning</u>, 346 F.3d at 400-01.

Therefore, the Court concludes that the <u>Michigan Academy</u> exception does not apply in this action and, because Plaintiff's due process claim arises under the Medicare Act, Plaintiff was obliged to fully exhaust the claim before seeking judicial review pursuant to § 405(g).  The Court will, accordingly, grant Defendants' motion to dismiss the second cause of action for lack

14

of subject matter jurisdiction.

**B.  MSP Reimbursement and the Collateral Source Statute**

As to Plaintiff's remaining causes of action, Defendant moves to dismiss for failure to state a claim or for summary judgment.  Both of Plaintiff's remaining claims derive from legal arguments which Plaintiff fully exhausted, ultimately before the Medicare Appeals Council.  Plaintiff seeks, on behalf of himself and a class of others similarly situated, a declaratory judgment and the return of funds reclaimed by Medicare pursuant to the MSP provisions, because Plaintiff argues that such recovery is barred by the NJCSS.  Plaintiff additionally argues that such recovery is, additionally, not permitted by the MSP provisions.

1.  <u>Standard of Review</u>

The Court's scope of review of the parties' dispute is defined in 42 U.S.C. § 405(g), which is made applicable to the Medicare Act by operation of 42 U.S.C. § 1395ff(b)(1)(A).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

> The role of the Court on judicial review [under § 405(g)] is to determine whether there is substantial evidence in the administrative record to support the Secretary's final decision.  Any findings of fact made by the ALJ must be accepted as conclusive, provided that they are supported by substantial evidence.

Papciak v. Sebelius, 742 F. Supp. 2d 765, 768 (W.D. Pa. 2010)
(citing 42 U.S.C. § 405(g)). The Court's role, as to the
Secretary's legal conclusions, is to determine whether the
Secretary applied the proper legal standard in evaluating
Plaintiff's claim of entitlement to Medicare benefits, but
Plaintiff bears the burden of proving his entitlement to the
Medicare coverage at issue. Beckett v. Leavitt, 555 F. Supp. 2d
521, 526 (E.D. Pa. 2008). The Court will, therefore, consider
the factual and legal conclusions presented in the administrative
record when making this determination, and will consequently
treat this review as one seeking summary judgment pursuant to
Fed. R. Civ. P. 56(a).

The parties do not dispute the facts in this action;
Plaintiff contests the legal determination of the Secretary (via
the Medicare Appeals Council) and the decision of the ALJ in this
case that a waiver of reimbursement was not warranted. Plaintiff
contests this conclusion for two primary and interconnected
reasons: (1) because, he argues, MSP reimbursement of Medicare
from lump sum tort settlement is prohibited by the NJCSS, N.J.
Stat. Ann. § 2A:15-97; and (2) because MSP reimbursement is not
authorized under the MSP provision itself because the tort
defendant (Showboat, in Plaintiff's case) and its insurer cannot
be considered a "primary plan" under the MSP provision.

Defendants respond that the NJCSS does not apply to the

16

conditional Medicare benefits at issue in this case and dispute Plaintiff's narrow definition of "primary plan" as not reflective of the text of the MSP provision and supporting regulations. Additionally, Defendants argue that, to the extent that the NJCSS is interpreted to prevent Medicare from recovering conditional benefits otherwise recoverable under the MSP provisions, the NJCSS is preempted by the MSP.  The Court will conduct its review by first providing a brief overview of the two statutes at issue. The Court will then determine whether it should interpret the NJCSS to bar recovery of Plaintiff's Medicare benefits in this case.  The Court will next turn to interpreting whether the MSP provisions authorize reimbursement in this matter.  Finally, if the Court finds that the two are in conflict, the Court will determine whether the NJCSS is preempted by the MSP provisions.

   2.   Statutory Overview

   Medicare is a federal entitlement program which provides health insurance benefits to qualified elderly and disabled individuals.  See generally, 42 U.S.C. §§ 1395 et seq.  As it was first enacted, Medicare was the primary payer for medical costs required by beneficiaries, even if the beneficiary could also recoup some or all of the necessary benefits from another source, such as private health insurance.  Zinman v. Shalala, 67 F.3d 841, 843 (9th Cir. 1995).  In 1980, Congress amended the Medicare statute to include the Medicare Secondary Payer provisions, which

required Medicare to serve only as a secondary payer when a
beneficiary could recover benefits from a another source.  Id.;
42 U.S.C. § 1395y(b).  The MSP provisions prohibited payment of
Medicare benefits to beneficiaries when a primary payer could be
expected to promptly pay such benefits; and permitted Medicare to
seek reimbursement of funds paid to a beneficiary if a primary
payer subsequently was deemed to be responsible for such payment.
42 U.S.C. § 1395y(b)(2)(A),(B).  Until amendment in 2003, the MSP
provisions were limited by federal courts to only authorizing
Medicare reimbursement from primary plans, such as private health
insurance plans, that could be expected to pay benefits to the
beneficiary "promptly" and had a preexisting obligation to pay
such benefits.  Mason v. American Tobacco Co., 346 F.3d 36, 42
(2d Cir. 2003).  In 2003, however, the MSP provisions were
further amended to permit Medicare to seek reimbursement from
other responsible sources, such as tortfeasors, who were
determined to be responsible for payment of the beneficiary's
medical expenses.  Brown v. Thompson, 374 F.3d 253 (4th Cir.
2004).  The amended MSP provisions state that

> (2) Medicare secondary payer
>
> (A) In general
>
> Payment under this subchapter may not be made,
> except as provided in subparagraph (B), with
> respect to any item or service to the extent
> that--
>
> (i) payment has been made, or can reasonably

be expected to be made, with respect to the item or service as required under paragraph (1), or

(ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

(B) Conditional payment

(i) Authority to make conditional payment

The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.

(ii) Repayment required

A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter

19

with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means. If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60-day period that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or other information is received, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments).

42 U.S.C. § 1395y(b)(2). Thus, the 2003 amendments, in part, operated to prevent responsible tortfeasors or recovering tort plaintiff/beneficiaries from retaining the medical expenses paid by Medicare.

Under New Jersey law, tort plaintiffs are also barred from receiving certain kinds of double recovery by the Collateral Source Statute. The statute provides that a tort plaintiff cannot recover damages from a defendant when the plaintiff has already received funding from a different source for the same injury. The statute states that

In any civil action brought for personal injury or death . . . if a plaintiff receives

> or is entitled to receive benefits for the
> injuries allegedly incurred from any other
> source other than a joint tortfeasor, the
> benefits, other than workers' compensation
> benefits or the proceeds from a life insurance
> policy, shall be disclosed to the court and
> the amount thereof which duplicates any
> benefit contained in the award shall be
> deducted from any award recovered by the
> plaintiff, less any premium paid to an insurer
> directly by the plaintiff or by any member of
> the plaintiff's family on behalf of the
> plaintiff for the policy period during which
> the benefits are payable. Any party to the
> action shall be permitted to introduce
> evidence regarding any of the matters
> described in this act.

N.J. Stat. Ann. § 2A:15-97.

The purposes of the NJCSS, enacted in 1987, were to prevent double recovery by a tort plaintiff from both a collateral source of benefits (such as a health insurer) and a tort defendant. Parker v. Esposito, 291 N.J. Super. 560, 566 (App. Div. 1996). Additionally, the NJCSS was enacted to shift the burden of medical costs related to tort injuries, wherever possible, from liability insurers to health insurers, and thereby to keep liability insurance premiums down. Id.; Lusby v. Hitchner, 273 N.J. Super. 578, 591 (App. Div. 1994).

Thus, the question at issue in the present action is whether, when Plaintiff received his lump sum settlement from Showboat, he received any recovery for his personal injury medical expenses sufficient to trigger the MSP reimbursement provision. If the NJCSS prohibited Plaintiff from recovering his

21

medical expenses from Showboat, because those costs had already been received as a collateral source from Medicare, then Medicare's MSP reimbursement provisions would not be triggered. However, if Plaintiff did, or was permitted, to recover his medical care costs from Showboat, despite the NJCSS, then the settlement recovery would permit MSP reimbursement.

       3.  <u>Conditional Payments as Collateral Source</u>

Defendants argue that the NJCSS would not have prevented Plaintiff from recovering his medical expenses under the NJCSS because such benefits were conditional on subsequent reimbursement. Additionally, Defendants argue that even if Plaintiff's medical costs would be deemed a collateral source and could not have been recovered in a judgment awarded by a court, the NJCSS does not bar a <u>settlement</u> agreement negotiated by the parties from including payment for medical costs.

Initially, the Court notes that as a federal court interpreting state law, the Court looks first to whether the state's highest court has addressed the precise question presented; if not, the Court "must predict how [that] court would resolve the issue." <u>Wayne Moving & Storage of N.J., Inc. v. School Dist. of Philadelphia</u>, 625 F.3d 148, 154 (3d Cir. 2010). In doing so, "we must look to decisions of state intermediate appellate courts" among other sources. <u>Meyer v. CUNA Mutual Ins. Society</u>, 648 F.3d 154, 164 (3d Cir. 2011). "Although not

dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an indication that the highest court would rule otherwise." Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir. 1996).  Although the New Jersey Appellate Division has not explicitly addressed the issue presented here, their decisions provide significant guidance in addressing the question the Court confronts.

The Court first addresses Defendant's second argument, that the NJCSS is not applicable in this case because it involves a settlement.  Defendants point to language in a New Jersey Appellate Division opinion noting that the NJCSS "speaks only to judgments and not to settlements" to support its interpretation of the statute.  Werner v. Latham, 332 N.J. Super. 76, 84 (App. Div. 2000).  However, the Court declines to interpret the NJCSS as having no application to a settlement agreement.

Plaintiff argues persuasively that settlement negotiations take place in the shadow of the recoverable liability at trial, and therefore naturally follow the contours of what the tort defendant could potentially be compelled to pay by a court. Additionally, the Court notes that the New Jersey Supreme Court has applied the NJCSS's prohibition on double recovery in the context of tort settlements, as well as court judgments.  See Perreira v. Rediger, 169 N.J. 399, 403-405 (2001) (applying NJCSS

23

to limit reimbursement of primary health insurers from tort
settlements entered into by insured/plaintiffs with tort
defendants).  Therefore, the Court concludes that the impact of
the NJCSS on this action is not affected by the fact that
Plaintiff's tort recovery came in the context of a settlement
rather than after a trial.

The Court now turns to the issue of whether Plaintiff could
have won damages including medical expenses paid by Medicare at
trial.  Defendants argue that provisional Medicare benefits do
not constitute a collateral source under the NJCSS because,
unlike a private medical insurance benefit or social security
disability benefits, Medicare provisional benefits will be
recovered after Plaintiff receives a damages award or settlement
upon release of liability.  In support of this position,
Defendants look to decisions of the New Jersey Appellate Division
determining that provisional Medicaid benefits do not constitute
a collateral source.  In Lusby v. Hitchner, the Appellate
Division held that the NJCSS did not bar a tort plaintiff from
recovering from the tort defendant's liability insurer the cost
of medical expenses conditionally paid by Medicaid.  Lusby, 273
N.J. Super. at 581-83.  The Appellate Division reasoned that the
purposes of the NJCSS did not warrant its application to
conditional Medicaid benefits that were subject to reimbursement.

> We think it plain, however, that neither of
> these purposes [preventing double recovery and

24

> shifting burden from liability insurer to
> health insurer] is advanced by application of
> the collateral source statute where, as here,
> a plaintiff could not in any case pocket a
> double recovery for medical expenses for the
> reason that his entire recovery is subject to
> Medicaid's reimbursement rights.  Nor are the
> statutory purposes advanced when the ultimate
> burden is shifted from the tortfeasor's
> liability carrier to a governmentally-funded
> secondary payer.

Id. at 391.

The Appellate Division has subsequently reinforced this rule
by way of explaining why the collateral source statute does apply
to federal Social Security benefits.  The Appellate Division
reasoned that the statute

> does not apply to Medicaid payments because
> such payments are reimbursable.  Plaintiffs
> attempt to extend that holding to the present
> case with respect to [plaintiff's] receipt of
> social security benefits . . . However, the
> concepts are clearly distinguishable. Medicaid
> reimbursement is federally mandated. Thus, a
> plaintiff receiving Medicaid benefits will not
> receive a double recovery, assuming the
> federal law will be observed.  There is no
> such federal mandate for social security
> benefits.  That is, they are not reimbursable
> to the federal government if the recipient
> receives a replacement benefit.

Thomas v. Toys "R" Us, Inc., 282 N.J. Super. 569, 588-89 (App.
Div. 1995).

Plaintiff argues that Lusby is distinguishable from Medicare
payments because the Lusby court based its reasoning on the
unconditional nature of the Medicaid reimbursement provisions,
which, Plaintiff argues, are fundamentally different from the

25

conditional nature of the Medicare reimbursement provisions.  The
Court disagrees.

The Court begins by noting that no such reference to the
unconditional nature of the Medicaid reimbursement provisions
exists in Lusby.  The Lusby court merely concluded that because
the Medicaid benefits were subject to reimbursement, they could
not be considered a collateral source.  That same reasoning was
echoed in Thomas and provided the basis of distinction from the
Social Security benefits at issue there.  Indeed, in other
subsequent opinions, the Appellate Division has referred to the
rule not as being about Medicaid, per se, but about the
conditional nature of the benefits. See Woodger v. Christ
Hospital, 364 N.J. Super 144, 151 (App. Div. 2003) ("We have also
held that benefits such as Medicaid, subject to reimbursement by
the plaintiff to the payer from the proceeds of a negligence
judgment or settlement, are similarly not includable as a
collateral source because they do not constitute double
recovery.") (emphasis added).

Secondly, the Court finds that the provisions of the
Medicaid reimbursement statute are not meaningfully different
from the MSP provisions at issue.  For example, the federal
Medicaid statute provides that the states administering the
Medicaid program shall enact

> laws under which, to the extent that payment
> has been made under the State plan for medical

> assistance for health care items or services
> furnished to an individual, the State is
> considered to have acquired the rights of such
> individual to payment by any other party for
> such health care items or services.

42 U.S.C. § 1396a(a)(25)(H).  The New Jersey statue enacted in

response holds that any recipient of Medicaid funds, who has

brought a tort action against a third party for injuries

resulting in Medicaid-covered medical expenses

> shall immediately reimburse the division in
> full from the proceeds of any settlement,
> judgment, or other recovery in any action or
> claim initiated against any such third party
> subject to a pro rata deduction for counsel
> fees, costs, or other expenses incurred by the
> recipient or the recipient's attorney

N.J. Stat. Ann. § 30:4D-7.1(b).  The Court concludes that these

statues provide that when a defendant settles a claim or a

plaintiff/beneficiary is awarded damages on a claim for damages

that were initially paid with Medicaid benefits, the beneficiary

must reimburse Medicaid for the benefits he or she received.  It

is apparent that this requirement is no more or less

unconditional than the federal Medicare reimbursement scheme,

which will be discussed below.

   The Court therefore concludes that the Lusby reasoning is

persuasive in the Medicare context, where, as with Medicaid, the

benefits alleged to be collateral are subject to federal

reimbursement.  Defendants cite to an unpublished opinion of the

Appellate Division which similarly found the reasoning persuasive

in the Medicare context.   In <u>Jackson v. Hudson Court, LLC</u>, 2010 WL 2090036 (N.J. Super. App. Div., May 24, 2010), the Appellate Division affirmed the trial court's denial of a tort plaintiff's motion to allocate the lump sum settlement as in no way including medical expenses paid for by Medicare.   The plaintiff there argued that the allocation was appropriate because the NJCSS prohibited her from recovering any such assets paid by Medicare as a collateral source.   The Appellate Division affirmed the ruling by concluding that the NJCSS does not apply to Medicare conditional benefits subject to reimbursement, much as the <u>Lusby</u> court had so concluded in the Medicaid context.

> Just as with Medicaid, because the secondary payer, Medicare, has a nearly unqualified right to reimbursement, the outcome is the same.   Even if a claimant was able to recover medical expenses, he could not pocket them and hence cannot obtain the "double recovery" that the collateral source statute is designed to avoid.   A Medicare recipient cannot have his medical expenses paid for and then retain that exact amount in a personal injury recovery any more than can a Medicaid recipient. Therefore, we conclude that the collateral source rule does allow a personal injury settlement to include recovery of medical expenses paid for by Medicare.

<u>Id.</u> at *3.   The Court finds this reasoning persuasive and, therefore, concludes that the New Jersey Supreme Court would likely hold that, as with Medicaid, the NJCSS does not apply to exclude conditional Medicare benefits from a tort settlement or judgment.

28

4.  <u>Reimbursement Under the MSP Provisions</u>

Finally, Plaintiff argues that Defendants have no right to reimbursement in this action under the terms of the MSP provision itself.  Plaintiff principally makes three arguments in support of this proposition.  First, Plaintiff argues that the MSP permits reimbursement only from primary plans, and that Showboat, the settling tortfeasor, does not qualify as a primary plan under the statute because it had no "preexisting obligation" to pay for Plaintiff's injuries.  Second, Plaintiff argues that the MSP permits reimbursement only on a showing that the primary plan had a demonstrated responsibility to pay for the medical care costs paid by Medicare, which Plaintiff claims Defendants cannot prove here because the settlement was a lump sum, not specifically allocating any portion to the medical expenses.  Finally, Plaintiff argues that certain specific provisions of the MSP Manual, a handbook of Medicare policy explanations for beneficiaries regarding Medicare's reimbursement rights, prohibit Medicare from seeking reimbursement from a lump sum tort settlement in New Jersey.

As to Plaintiff's first argument, Plaintiff cites to the Second Circuit case of <u>Mason v. American Tobacco Co.</u> for the proposition that the MSP provisions cannot be interpreted to include a tortfeasor in its definition of a "primary plan."  346 F.3d 36, 42 (2d Cir. 2003).  Plaintiff additionally cites to the

29

unpublished order in Early v. Wal-Mart Stores, Inc., Civ. No. 01-5531 (D.N.J., July 28, 2003), which similarly held that under the MSP, "Medicare is not entitled to a statutory right of reimbursement or lien against a tort judgment recovered by a plaintiff." Id.; AR at 207. The Early order based its conclusion on the Fifth Circuit case of Thompson v. Goetzmann, 337 F.3d 489, 493-95 (5th Cir. 2003). These decisions conclude that a tortfeasor with no preexisting obligation, such as a contractual obligation, to pay medical costs cannot be defined as a "self-insured plan" under the statute as it was then written. The Mason court held that the MSP permitted recovery only from the beneficiary's primary health insurer. Mason, 346 F.3d at 42.

These decisions cited by Plaintiff base their reasoning, however, by reference to the MSP provisions prior to the December 2003 amendments. These 2003 amendments explicitly broadened the definition of "primary plan" to include tortfeasors responsible for the beneficiary/tort plaintiff's medical expenses paid by Medicare. See Bio-Medical Applications of Tennessee, Inc. v. Central States Southeast & Southwest Areas Health & Welfare Fund, 656 F.3d 277, 289-90 (6th Cir. 2011) (explaining the history of the 2003 MSP amendments and their effect of abrogating Mason v. American Tobbacco and Thompson v. Goetzman); Brown v. Thompson, 374 F.3d 253 (4th Cir. 2004) (recognizing abrogation of Thompson v. Goetzman and holding that a tort defendant, or defendant's

liability insurer, settling with beneficiary is "primary plan" under MSP).

Indeed, the Court notes that the post-2003 version of the MSP clearly includes tortfeasors and their insurance carriers in its definition of "primary plan."  In a provision added in 2003, the statute expressly defines "primary plan" as including

> [a] liability insurance policy or plan (including a self-insured plan) or no fault insurance. . . . An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

42 U.S.C. § 1395y(b)(2)(A).  Thus, the Court holds that, pursuant to the 2003 amendments to the MSP provisions, Showboat, or its liability insurer, could be held as a primary plan under the MSP, and the settlement it paid to Plaintiff can be a source of reimbursement under the MSP.[4]

As to Plaintiff's second argument, that the Medicare reimbursement is not authorized under the MSP because Plaintiff's settlement is for an undifferentiated lump sum and not explicitly allocated to his medical expenses, the Court is similarly unconvinced.  The statute provides that a "primary plan's"

---

[4] The Court notes that the administrative record and the parties' briefs are silent as to whether Showboat carried liability insurance to cover the settlement with Plaintiff and his wife, or whether it paid the settlement itself, but the Court concludes that the fact is not material, as either would qualify under the MSP as a "primary plan."

responsibility for the subject medical expenses can be
demonstrated through settlement by release of liability.

> A primary plan's responsibility for such
> payment may be demonstrated by a judgment, a
> payment conditioned upon the recipient's
> compromise, waiver, or release (whether or not
> there is a determination or admission of
> liability) of payment for items or services
> included in a claim against the primary plan
> or the primary plan's insured, or by other
> means.

42 U.S.C. § 1395y(b)(2)(B)(ii).  The Court interprets this
section of the statute to clearly state that a lump sum
settlement, through a release and waiver such as Plaintiff here
signed with Showboat, demonstrates the responsibility of the tort
defendant primary plan for the subject medical expenses.
Regulations promulgated after the 2003 amendment to the statute
make the point even more clearly.

> A primary payer's responsibility for payment
> may be demonstrated by . . . [a] payment
> conditioned upon the recipient's compromise,
> waiver, or release (whether or not there is a
> determination or admission of liability) of
> payment for items or services included in a
> claim against the primary payer or the primary
> payer's insured.

42 C.F.R. § 411.22(b)(2).  Thus, the agency's regulations,
entitled to Chevron deference[5], state that the alleged

_____

[5]   Chevron, U.S.A. Inc. v. Natural Resources Defense
Council, Inc., 467 U.S. 837, 842-44 (1984).  Federal Courts have
held that this regulation interpreting the MSP is entitled to
Chevron deference "because it furthers the Act's goal of
preventing private plans from shifting the costs to Medicare."
Bio-Medical Applications, 656 F.3d at 282.

tortfeasor's payment upon a release demonstrates the tortfeasor's responsibility as to the beneficiary's claim against the tortfeasor.

At this point, the Court must review the fact found by the ALJ, namely, that Plaintiff's lump sum settlement and release of all claims against the tortfeasor included compensation for medical expenses already paid by Medicare.  As noted above, this Court reviews this final decision of the Secretary (by the Medicare Appeals Council) under the limited jurisdiction conferred by 24 U.S.C. § 405(g), which is made applicable to review of a final Medicare benefits determination under 42 U.S.C. § 1395ff(b)(1)(A).  See supra note 1 and accompanying text.  The Court's review of factual findings is confined to the administrative record, and the Court must accept any finding of fact supported by substantial evidence in the record taken as a whole.  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Under this standard of review, the Secretary's findings are amply supported by the record and will be affirmed, as now explained.

The circuit courts to consider the issue are in agreement that unless a settlement is explicitly allocated to injuries other than medical expenses, the fact of the settlement alone is sufficient.  Plaintiff cites to the Eleventh Circuit case of Bradley v. Sebelius for the proposition that a settlement of multiple causes of action does not permit reimbursement for

33

medical expenses.  621 F.3d 1330 (11th Cir. 2010).  In Bradley, the plaintiffs, the survivors of a decedent relative and the decedent's estate, sued for wrongful death of the decedent.  Id. at 1337.  The surviving children brought a survivor action, but did not seek damages for medical expenses, which were only sought by the estate.  Id.  The defendant settled with all plaintiffs, and the settlement was apportioned between the survivors and the estate by order of a state probate court.  Id. 1333-34.  The Eleventh Circuit held that Medicare could only seek reimbursement from the portion of the settlement apportioned to the estate, and could not seek reimbursement from the settlement proceeds apportioned to the survivors.  Id. 1337.

The situation is not comparable in the instant case, however.  Here, Plaintiff expressly sought damages, in part, based on his medical expenses; the settlement reached with Showboat resolved all of Plaintiff's claims, necessarily including Plaintiff's claim for medical expenses.  In fact, in the release agreement, Plaintiff and his wife expressly agreed to indemnify Showboat for any Medicare liens, indicating that Plaintiff and Showboat negotiated the medical expenses and Showboat's settlement payment included remuneration in exchange for such a release and indemnification.[6]  That Plaintiff's state

_____

[6] Plaintiff asserts that the release form he signed was prepared by Showboat, included such indemnification language standard, and was not negotiated by Plaintiff, but such facts are

tort complaint also sought <u>per</u> <u>quod</u> damages on behalf of his wife does not alter the Court's conclusion that the settlement as reached in this case appears to have included settlement funds in satisfaction of Plaintiff's medical expenses.

The Sixth Circuit case of <u>Hadden v. United States</u> supports this conclusion.  The Circuit held that

> the scope of the plan's 'responsibility' for the beneficiary's medical expense -- and thus of his own obligation to reimburse Medicare -- is ultimately defined by the scope of his own claim against the third party that is later released in settlement.

<u>Hadden v. United States</u>, 661 F.3d 298, 302 (6th Cir. 2011).

Plaintiff argues that, in the instant matter, he attempted to acquire a judicial allocation of the settlement in the underlying Superior Court tort action but was prevented from doing so by Defendants, who intervened to oppose Plaintiff's proposed allocation order.  The Court finds that Medicare's intervention did not prevent Plaintiff from making his case for allocation on the merits to the ALJ or to the Medicare Appeals Council.  The Court further finds no persuasive argument in the record indicating that such an allocation would have been justified; the only evidence the Court finds is the complaint

---

not included in the administrative record, and are therefore outside the Court's scope of review.  The Court does note, however, that the administrative record reveals that CMS's contractors had advised Plaintiff and his counsel to consider the future reimbursement claims by Medicare when negotiating a settlement.  AR at 250.

seeking damages for medical expenses, the release of all liability for Showboat and indemnification for Medicare liens, in exchange for $40,000.  These facts point only in the direction of Plaintiff having received compensation from Showboat for his $2,503 in medical expenses.  See Benson v. Sebelius, 771 F. Supp. 2d 68, 75 (D.D.C. 2011) (holding that settlement upon release of all claims demonstrates responsibility of primary plan for included medical expenses).  Consequently, the Court will affirm the Medicare Appeals Council on this point.

Finally, Plaintiff argues that the MSP Manual contains language suggesting that reimbursement in this case, resulting from a lump sum tort settlement is improper.[7]  Plaintiff points to three provisions of the Manual that he argues are inconsistent with the agency reimbursement in his case.  First, Plaintiff points to Section 50.4.1 of the Manual which states, in part, that "Medicare's [reimbursement] claim comes into existence . . . when payment for medical expenses that Medicare conditionally paid for has been made by a third party payer." (Emphasis added).  Plaintiff argues that the "for medical expenses" clause indicates that the Manual creates an obligation for Medicare to prove the

---

[7] The Court does not here hold that the MSP Manual is entitled to the force of law or could operate as an independent cause of action, recognizing that courts have previously held that it is not.  See United States v. R&F Props. of Lake County., Inc., 433 F.3d 1349, 1357 (11th Cir. 2005); the Court merely concludes that no language in the Manual is inconsistent with the reimbursement actions of CMS in this case.

allocation of the lump sum settlement to medical expenses, which did not happen in the current context.  The Court finds this argument unpersuasive because it has already concluded that the statute and regulations provide a clear definition of how responsibility of the third party payer is demonstrated, and that the threshold was met in this case.  Therefore, the Court finds nothing inconsistent in this portion of the Manual with Medicare reimbursement.

Second, Plaintiff points to Section 50.4.4 of the Manual, which states, in part, that "Medicare does not seek recovery from portions of court awards that are designated as payment for losses other than medical services."  The Court concludes that this provision does not apply to Plaintiff's case as there was no order allocating the settlement in Plaintiff's case, and the Court notes that other portions of the same Section clearly indicate that the policy announced in this section of the Manual is clearly in accord with reimbursement here.[8]

_____

[8] As Defendants point out, the section of the Manual states, prior to the section quoted by Plaintiff, that

In general, Medicare policy requires recovering payments from liability awards or settlements, whether the settlement arises from a personal injury action or a survivor action, without regard to how the settlement agreement stipulates disbursement should be made. That includes situations in which the settlements do not expressly include damages for medical expenses.  Since liability payments are usually based on the injured or deceased person's medical expenses, liability payments are considered to have been made 'with respect to' medical services related to the injury even when the

Third and finally, Plaintiff points to Section 50.5.4.1.1 of the Manual, which states, in part, that "If a [state] wrongful death statute does not permit recovering medical damages, Medicare has no claim to the wrongful death benefits." Defendants point out, and the Court agrees, that this Section addresses wrongful death actions only, such as those at issue in the <u>Bradley v. Sebelius</u> case, and is therefore inapplicable to Plaintiff's claim.

To the extent that Plaintiff's argument as to the Manual (or his other arguments interpreting the MSP provisions) relies on Plaintiff's premise that the NJCSS prevented Plaintiff from collecting medical expenses conditionally paid by Medicaid, the Court notes that it has already rejected the basis of this argument. The Court has determined that, were the New Jersey Supreme Court to rule on the question of whether the NJCSS prevents a damage award or tort settlement from including medical expenses conditionally paid by Medicare, it would conclude that such payments are not a collateral source under the NJCSS. Therefore, the Court must reject any argument as to the right of Medicare to reimbursement under the MSP that is based on this

_____

settlement does not expressly include an amount for medical expenses.
Section 50.4.4.  The Court concludes that to read this section, in its entirety, as in any way inconsistent with Medicaid seeking reimbursement in this matter would be a significant grammatical challenge.

state law premise.

Accordingly, the Court will affirm the Medicare Appeals Council's determination that the MSP provisions authorize the agency to seek reimbursement of its medical expenses provisionally paid to Plaintiff in the amount of $1,423.43.  The Court will, additionally, grant Defendants' motion for summary judgment as to Plaintiff's first and third causes of action, as the Court concludes that there is no material dispute of fact in the record demonstrating Plaintiff's entitlement to prevail on those causes of action.

                    4.   <u>Preemption</u>

The Court has concluded that the NJCSS does not conflict with the MSP provisions.  As a result, because the Court has found that the NJCSS does not apply to conditional Medicare benefits under New Jersey law, Defendants' argument that Plaintiff's interpretation of the NJCSS would conflict with federal law is moot.


**IV.  CONCLUSION**

The Court has concluded that it lacks subject matter jurisdiction to hear Plaintiff's due process claim because the claim arises under the Medicare Act and Plaintiff did not fully exhaust the claim as required under 42 U.S.C. §§ 405(g) and (h). Additionally, the Court finds that the New Jersey Supreme Court

is likely to conclude that conditional Medicare benefits, subject to reimbursement, are not a collateral source under the NJCSS and therefore do not prevent Defendants' actions seeking reimbursement of such funds from a settlement with a New Jersey tortfeasor.  Finally, the Court concludes that such reimbursement actions are authorized under the MSP provisions discussed above because Showboat, the alleged tortfeasor in the underlying state tort action, was a primary payer determined to be responsible for Plaintiff's medical expenses within the definitions of those terms under the Medicare Act.  Moreover, the Medicare Appeals Council's final decision that Plaintiff's lump sum tort settlement included payment for medical expenses previously provisionally paid by Medicare, which were thus subject to repayment by Plaintiff to Medicare, is supported by substantial evidence in the record and must be affirmed.  As a result, the Court will affirm the conclusion of the Medicare Appeals Council and will grant Defendants' motion for summary judgment. The accompanying Order will be entered.


**March 23, 2012**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge