```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOSEPH B. MASON, Individually and on behalf of all persons similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KATHLEEN SEBELIUS, et al.,<br><br>　　　　　　Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 11-2370 (JBS/KMW)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE**, Chief Judge:

　　This matter is before the Court on Plaintiff Joseph Mason's motion for reconsideration and/or clarification. [Docket Item 20.] Plaintiff requests that the Court issue an Order amending or clarifying its March 23, 2012 Opinion and Order in this matter. [Docket Items 18 & 19.] For the reasons stated below, the Court will deny Plaintiff's motion. THE COURT FINDS AS FOLLOWS:

　　1. In this action, Plaintiff seeks to recover, on behalf of himself and a putative class of similarly situated individuals, money that he paid as a reimbursement to Medicare under protest in 2009.[1] Plaintiff was injured when he fell at a casino in 2004. He incurred medical costs of approximately $2,500 as a

---

[1] The Court incorporates, by reference, the factual and procedural history of this action recited in its March 23, 2012 Opinion. See Mason v. Sebelius, 2012 WL 1019131, *1-3 (Mar. 23, 2012).

result of that fall, which costs were initially paid by Medicare. Plaintiff and his wife, Carol Mason, then sued the casino owner to recover damages for Plaintiff's pain and suffering, medical costs, and for loss of consortium. The tort action was voluntarily dismissed in a settlement for a lump sum of $40,000, a condition of which was that Plaintiff and his wife agreed to release all claims against the casino owner, without specifically allocating the settlement funds among the various claims for damages. Thereafter, the Centers for Medicare and Medicaid Services ("CMS") demanded reimbursement of a discounted portion of the medical care costs it paid on Plaintiff's behalf.[2]

2. Plaintiff sought a waiver of this reimbursement through the Medicare administrative appeals process, which ultimately resulted in a final adverse decision by the Medicare Appeals Council on February 18, 2011. Thereafter, Plaintiff filed this action. Plaintiff's principal arguments have consistently been that the reimbursement was not authorized by the Medicare as a Secondary Payer ("MSP") statute[3] and that the reimbursement is prohibited by the New Jersey Collateral Source Statute

---

[2] The benefits were discounted to $1,423.43 to take into consideration Plaintiff's procurement costs, pursuant to 42 C.F.R. § 411.37, a regulation stating that CMS's reimbursement will be reduced by taking into account the proportion of the total settlement or award expended in legal fees and costs.

[3] Codified at 42 U.S.C. § 1395y(b)(2).

("NJCSS").[4]

3. In its March 23, 2012 Opinion, the Court granted Defendants' motion to dismiss and for summary judgment, concluding, in part, that conditional Medicare payments are not a collateral source under the NJCSS, and that the MSP statute permits Medicare to seek reimbursement of such conditional payments from a lump sum tort settlement such as Plaintiff received. See Mason v. Sebelius, 2012 WL 1019131 at *7-16.

4. On April 9, 2012, Plaintiff filed his instant motion for reconsideration and/or clarification. [Docket Item 20.] In his motion, Plaintiff asks the Court to clarify or reconsider its March 23 Opinion by holding that CMS is only entitled to reimbursement of some unspecified fraction of Plaintiff's medical costs as a proportionate share of his total recovery. Plaintiff urges the Court to apply the reasoning of Arkansas Dept. of Human Svcs. v. Ahlborn, 547 U.S. 268 (2006)[5] to the federal MSP statute, and hold that when CMS seeks reimbursement from a tort plaintiff who has recovered an undifferentiated lump sum settlement from a tort defendant or its insurer, in exchange for release of claims for medical costs conditionally paid by Medicare, that CMS is only entitled to seek a discounted amount

---

[4] Codified at N.J. Stat. Ann. § 2A:15-97.

[5] As will be explained below, Ahlborn addressed state Medicaid reimbursements rather than the federal MSP statute.

of reimbursement.  In short, Plaintiff argues, because he settled his claims "for something less that [sic] his actual damages," he should only be compelled to reimburse Medicare for "something less" than the total medical costs paid by Medicare.  Pltf.s' Brief at 11.  Plaintiff does not articulate what this discount should be in his case.

    5.  Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1(i) governs the Court's analysis of Plaintiff's motion for reconsideration and/or clarification.

    6.  Local Civil Rule 7.1(i) requires the moving party to set forth the factual matters or controlling legal authorities it believes the Court overlooked when rendering its initial decision.  L. Civ. R. 7.1(i).  To prevail on a motion for reconsideration, the movant must show:

> (1) an intervening change in the controlling law; (2) the  availability of new evidence that was not available when  the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); see also Tehan v. Disability Management Services, Inc., 111 F. Supp. 2d 542, 549 (D.N.J. 2000).  To prevail under the third prong, the movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered."  P. Schoenfeld Asset Management LLC v. Cendant Corp., 161 F. Supp. 2d

4

349, 353 (D.N.J. 2001) (internal quotations and citations omitted).  The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly. United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994); Maldonado v. Lucca, 636 F. Supp. 621, 629 (D.N.J. 1986).

    7.  Defendants argue that, under this standard, Plaintiff's motion must be denied because Plaintiff's argument is not a controlling decision of law that was brought to the Court's attention but not considered.  Plaintiff's argument, Defendants claim, was not previously raised before the Court in the briefing for the summary judgment motion.  The Court agrees.  While the Court notes that Plaintiff cited to Ahlborn in his opposition brief, he did not raise it in the context of his present argument, that the reasoning of the Ahlborn decision should be applied to limit MSP reimbursement.  Consequently, the Court will not grant Plaintiff's motion for reconsideration.

    8.  Further, even were the Court to reach the merits of Plaintiff's argument, that the reasoning of Ahlborn should be applied to the reimbursement provisions of the MSP statute, the Court would likewise deny Plaintiff's motion.  Plaintiff makes no effort to distinguish Hadden v. United States, 661 F.3d 298 (6th Cir. 2011) (despite the fact that Defendants attached a copy of the decision in a supplemental briefing to the Court on the motion to dismiss or for summary judgment, see Docket Item 17,

and the Court cited the case in its March 23, 2012 Opinion), which persuasively explained why Ahlborn should not apply to the MSP provisions.

9. The Hadden court rejected an argument similar to that which Plaintiff makes now, concluding that Ahlborn was distinguishable from the Medicare context because it was based on the specific language of the Medicaid statute.

> The Supreme Court did not divine principles of universal application in Ahlborn. What it did, rather, was interpret the language of the Medicaid statute. That language limits the state's right (actually it is the state's obligation) to seek reimbursement from settlement proceeds paid to a Medicaid beneficiary. The relevant limitation is that the state can seek reimbursement to the extent the settlement payor has "legal liability ... to pay for care and services available under the plan [.]" 42 U.S.C. §§ 1396k(a)(1)(A), 1396a(a)(25)(A). So "liability" was the critical term there; and the Court construed it to mean that the state was limited to the portion of the settlement that, per the stipulation of the settling parties, represented compensation for medical expenses. That is a natural reading of the term "liability," which indeed has a reasonably precise meaning in the law generally. In contrast, the critical term here [in the Medicare context] is "responsibility"--which does not have a precise meaning in the law generally, though one might expect its meaning to be broader than that of "liability."

Hadden at 303-04 (internal citations omitted). By contrast, the court concluded, the MSP statute permitted CMS to seek reimbursement to the extent of the tort defendant's (or primary

6

plan's) "responsibility" for medical expenses which, the court noted, is defined in the statute relatively broadly.

> As used in § 1395y(b)(2)(B)(ii), "responsibility" is no longer an undefined term into which courts might funnel their own notions (or [plaintiff's]) of equitable apportionment. It is instead a term of art, which defines several ways in which a primary plan's "responsibility" can be demonstrated for purposes of this section. We address only one of them here: specifically, under § 1395y(b)(2)(B)(ii) as amended, if a beneficiary makes a "claim against [a] primary plan[,]" and later receives a "payment" from the plan in return for a "release" as to that claim, then the plan is deemed "responsib[le]" for payment of the "items or services included in" the claim. Id. Consequently, the scope of the plan's "responsibility" for the beneficiary's medical expenses--and thus of his own obligation to reimburse Medicare--is ultimately defined by the scope of his own claim against the third party. That is true even if the beneficiary later "compromise[s]" as to the amount owed on the claim, and even if the third party never admits liability. And thus a beneficiary cannot tell a third party that it is responsible for all of his medical expenses, on the one hand, and later tell Medicare that the same party was responsible for only 10% of them, on the other.

Id. at 302 (emphasis original). Therefore, the Hadden court concluded that the MSP statute does not permit the kind of proportional discounting of Medicare reimbursement contemplated in Ahlborn and requested by Plaintiff here. The Court finds this reasoning persuasive and, therefore, concludes that even had Plaintiff raised this argument in the briefing on the summary

7

judgment motion, the Court would still deny Plaintiff's motion on the merits.

10.  Plaintiff argues that the Court should apply the Ahlborn reasoning in this new statutory context for policy reasons.  Specifically, Plaintiff argues that permitting CMS to recover the full value of a beneficiary's medical costs (minus, the Court notes, Plaintiff's procurement costs pursuant to 42 C.F.R. § 411.37) would disincentivize future settlements on the part of Medicare beneficiary plaintiffs.  Whatever the merits of Plaintiff's policy concerns may be, it is not in the Court's power to rewrite the plain text of the statute.  As the Court has concluded that the plain text of the statute permits CMS to seek recovery of the beneficiary's costs according to the "responsibility" of the primary insurer or self-insured tort defendant, the Court cannot instead choose to read the text as limiting that authority to the defendant's "liability" as was the case in Ahlborn.

11.  Therefore, for the reasons stated above, Plaintiff's motion for reconsideration and/or clarification will be denied.  The accompanying Order will be entered.


**July 31, 2012**             **s/ Jerome B. Simandle**
Date                              JEROME B. SIMANDLE
                                  Chief U.S. District Judge